## COATS *v.* PONTOTOC LUMBER CO.

(Division B. Feb. 27, 1933.)

[146 So. 302. No. 30468.]

Mitchell & Mitchell, of Tupelo, for appellant.

Fontaine & Adams, of Pontotoc, for appellee.

**Anderson, J.,** delivered the opinion of the court.

Appellee brought this action in the circuit court of Pontotoc county against appellant and R. T. Anderson, on a promissory note in the sum of five hundred ninety-four dollars. There was a judgment by default against Anderson, and a trial as to appellant. At the conclusion of the evidence, the court, at the request of appellee, directed a verdict against appellant. Judgment was accordingly entered, from which judgment appellant prosecutes this appeal.

Anderson desired to purchase materials to build a residence; he purchased them from appellee, and they went into the building of the residence. On the completion of

the building, there was due appellee the amount represented by the note sued on. The note was signed by R. T. Anderson and appellant some weeks after the materials had been furnished and the residence completed. It was first signed by Anderson, and some days thereafter it was signed by appellant. Appellant had a mortgage on the land on which the residence was built; the mortgage was to secure a note due him by Anderson. When Anderson applied to appellant to purchase the materials to go into his proposed residence, appellee knew of this lien on the land held by appellant and was not willing to furnish the materials unless appellant's lien was subordinated to its lien for the materials. If the evidence on behalf of appellee be true, this agreement thereupon took place: When the residence was completed, appellant would sign a note with Anderson for the amount remaining due on the materials. The evidence on behalf of appellant tended to show that he agreed to sign the note with Anderson, provided appellee would also procure the signature of one B. B. Bevil. In other words, that appellant was not to become liable on the note unless Bevil also signed it.

On cross-examination, appellant, as a witness in his own behalf, seemed to admit that the understanding between him and appellee was that Bevil's signature was first to be secured, and then he would sign the note. It is undisputed, however, that Bevil never signed the note, and therefore appellant signed it without Bevil's signature. In other parts of appellant's testimony he stated positively that he signed the note upon the distinct condition that Bevil also was to sign it. In directing a verdict for appellee, the court proceeded on the theory that the evidence on behalf of the appellant showed without conflict that the understanding was that appellant would sign the note provided Bevil first signed it, and that appellant having signed the note, without Bevil first having

signed it, thereby waived Bevil's signature and became liable thereon.

We think the ruling of the court would be sound if the evidence on behalf of appellant means what the court thought it did. Appellant's testimony is rather indefinite as to the understanding with reference to Bevil's signature to the note; still we think it was an issue for the jury as to whether or not appellant signed the note upon the condition that Bevil should sign it. Any evidence tending to show that Bevil was to sign the note as a condition precedent to appellant signing it, and that appellant signed it without Bevil first having signed it, would, of course, have a bearing on that issue. If the evidence showed without dispute, as the court below was of opinion that it did, that appellant signed the note under those circumstances, appellee would be entitled to a directed verdict.

The ground on which appellant bases his right to a reversal is that there was no consideration for the note. We do not agree with that contention. The consideration had already passed to Anderson when he and appellant signed the note. The consideration to Anderson was, under the law, a sufficient consideration to appellant.

If appellant is entitled to escape liability on the note, it is not on the ground of failure of consideration, but on the ground that it never was his note, that he never became liable thereon, and that Bevil's signature to the note was a condition to his liability thereon. If A requests B to sign his note, and B says, "All right, I will sign it provided you also get C to sign it," to which A agrees, and thereupon B signs the note and A fails to get C to sign it, under the law B is not liable on the note as between the original parties. Of course, it would be an entirely different question if the note were a negotiable instrument and had passed into the hands of a holder in due course; but that is not the case here. The

original payee held and sued on the note. The case of State v. Allen, 69 Miss. 508, 10 So. 473, 30 Am. St. Rep. 563, although very different on its facts, is in point on principle. It was held in that case that a surety who signed a bond upon condition that a certain solvent person would also sign it, was released from liability on the bond because without his consent, after the bond was completed but before its approval, such person was released.

We hesitate to set our judgment up against that of the trial court in its interpretation of the evidence; still we are constrained to hold that it was a question for the jury whether or not appellant signed the note upon the condition that the signature of Bevil would be obtained.

Reversed and remanded.